RIVAL 1981–IV DRILLING PROGRAM, LTD., Plaintiff-Appellant,

v.

GUARANTY BANK & TRUST, Defendant-Appellee.

No. 84CA1363.

Colorado Court of Appeals, Div. I.

Sept. 18, 1986.

Rehearing Denied Oct. 23, 1986.

Certiorari Granted (Rival) Feb. 9, 1987.

Hart & Trinen, Donald T. Trinen, Denver, for plaintiff-appellant.

Quiat, Bucholtz, Bull & Laff, Alan H. Bucholtz, Denver, for defendant-appellee.

STERNBERG, Judge.

Plaintiff, Rival 1981–IV Drilling Program, Ltd. (Rival), appeals from a directed verdict entered by the trial court in favor of defendant, Guaranty Bank and Trust (the Guaranty Bank). We affirm.

Rival was organized as a Colorado limited partnership. One of its limited partners is Norton, Underwood & Lamb Investments (Norton); its general partner is Rival Resources, Inc. (Rival Resources), a Colorado corporation. By the terms of the limited partnership agreement each limited partner was required to make a capital contribution, the major portion of which could be supplied in the form of a letter of credit, a type of security governed by § 4–5–101, et seq., C.R.S., of the Uniform Commercial Code. The agreement stated that Rival intended "to pledge the Limited Partners' Letters of Credit as security for loans to the Partnership."

On December 8, 1981, Norton procured an irrevocable letter of credit issued by Cache National Bank of Greeley in favor of the Guaranty Bank. The credit was to expire on December 8, 1982. In May 1982, this letter was given by Rival to the Guaranty Bank as partial collateral for a loan which was to mature on December 8, 1982. As further security for the loan, the Guaranty Bank required Rival Resources to execute an unconditional payment guaranty.

The letter of credit obtained by Norton was not called by the Guaranty Bank when payment of Rival's loan was due. This left an unpaid balance on the debt which the Guaranty Bank satisfied by recourse against a certificate of deposit owned by the guarantor, Rival, and held by the Guaranty Bank. Rival filed suit against the Guaranty Bank and Norton, claiming that the Guaranty Bank was negligent in allowing the credit to expire and that Norton, who had made no substitute contribution to Rival, had been unjustly enriched in these circumstances. For reasons not germane here, Norton was dismissed from the case, but Rival proceeded to trial against the Guaranty Bank. At the close of evidence, the trial court directed a verdict against Rival, ruling that it had not proved damages.

The sole issue on appeal is whether Rival suffered legally cognizable damages for

which the Guaranty Bank would be liable if found to be negligent in failing to call the Norton letter of credit. Our analysis of the rights and obligations of the parties as evidenced by the documents structuring this transaction leads us to conclude that Rival suffered no damage.

The letter of credit procured by Norton expressly established the Guaranty Bank as beneficiary of its terms. The issuer undertook to honor demands accompanied by documentation including, *inter alia*, the Guaranty Bank's certified statement that "funds are required in connection with a loan to Rival 1981–IV Partnership, Ltd." By the terms of the promissory note given the Guaranty Bank by Rival, Rival waived protest and assent "to any substitution or release of collateral." The security agreement accompanying this note listed the letters of credit as collateral and allowed the Guaranty Bank to "resort to any security it may have in the order it may deem proper." Finally, the guaranty executed by Rival Resources specified that, upon default by Rival, the Guaranty Bank could "resort to this guaranty without further having recourse against [Rival] or to any security given to secure the said indebtedness.... [and] abstain from perfecting or taking advantage of any security ..." given by Rival as collateral.

Rival asserts that the Norton credit was an asset owned by it which was worth $45,000 prior to its expiration. Rival argues that a secured party is under a duty to use reasonable care to preserve the value of collateral in its possession, *see* § 4–9–207, C.R.S., and that, if the Guaranty Bank is held to be negligent in not timely drawing upon the credit, Rival has suffered a $45,000 loss because it became obligated to pay that amount to Rival Resources pursuant to the law of guaranty and of partnership. In support of this argument, it cites § 7–60–118, C.R.S., and *Continental National Bank v. Dolan*, 39 Colo.App. 16, 564 P.2d 955 (1977).

The Guaranty Bank argues that Rival has suffered no loss because its books re-

flect a $45,000 debit to the capital account of Norton and a loan made by Rival Resources to Rival—representing payment on the guaranty—which was paid. Rival replies that these bookkeeping techniques are irrelevant to the question of damages: It asserts that the letter of credit represented a source of funds which was available to it until December 9, 1982, but lost when the credit expired. While we agree with Rival that the accounting techniques used in connection with this transaction are irrelevant to the question of damages, we cannot accept its characterization of the value represented by the Norton credit.

Here, we determine not rights as between parties to the credit, but rights as between pledgee and pledgor. As we read the language of the letter of credit and the other documents involved in the loan transaction, Rival had no right to draw upon the Norton letter of credit. Indeed, the credit could be drawn upon only by the Guaranty Bank and only to obtain payment of the loan.

Rival had acquired rights in the Norton credit, but these rights are only such as are conferred by the underlying loan agreement. By the Guaranty Bank's acceptance of the letters of credit as collateral for the loan, Rival obtained the right to have them used as recourse upon its default. However, this right was circumscribed by the right granted the Guaranty Bank under the loan documents, *i.e.*, to proceed against any collateral it chose in satisfaction of the debt. Our review of the record discloses no evidence that these rights were modified by enforceable oral agreement or otherwise and this theory was not argued before us. There is no indication that Rival had obtained or had applied for any other loan from the Guaranty Bank. Thus, the Norton letter of credit had no value to Rival independent of the Guaranty Bank's contractual right to choose its recourse upon Rival's default.

The notion that Rival has lost *something* is intuitively appealing. However, we con-

clude that what it lost it gave away. To hold that the Guaranty Bank was obligated to draw upon the letter of credit would be to rewrite the terms of the loan transaction. This we may not do.

The judgment is affirmed.

PIERCE and METZGER, JJ., concur.